IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ASHINC CORPORATION, *et al.*, | : | Chapter 11 |
| | : | Bankr. No. 12-11564-CSS |
| Debtors. | : | (Jointly Administered) |

---

| | | |
|---|---|---|
| CATHERINE E. YOUNGMAN, | : | |
| LITIGATION TRUSTEE FOR ASHINC | : | Adv. No. 13-50530-CSS |
| CORPORATION, ET AL., AS | : | |
| SUCCESSOR TO THE OFFICIAL | : | |
| COMMITTEE OF UNSECURED | : | |
| CREDITORS OF ASHINC | : | |
| CORPORATION, AND ITS AFFILIATED | : | |
| DEBTORS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| BDCM OPPORTUNITY FUND II, LP, | : | |
| BLACK DIAMOND CLO 2005-1 LTD., | : | |
| and SPECTRUM INVESTMENT | : | |
| PARTNERS, L.P., | : | |
| | : | |
| Intervenors, | : | |
| | : | |
| v. | : | |
| | : | |
| YUCAIPA AMERICAN ALLIANCE FUND | : | |
| L.P., AND YUCAIPA AMERICAN | : | |
| ALLIANCE (PARALLEL) FUND I, L.P., | : | |
| | : | |
| Defendants. | : | |

---

CATHERINE E. YOUNGMAN,                :      Adv. No. 14-50971-CSS
LITIGATION TRUSTEE FOR ASHINC        :
CORPORATION, ET AL., AS              :
SUCCESSOR TO BDCM OPPORTUNITY        :
FUND II, LP, BLACK DIAMOND           :
COMMERCIAL FINANCE, L.L.C., as       :
co-administrative agent, and SPECTRUM :
COMMERCIAL FINANCE LLC, as           :
co-administrative agent,             :
                                     :
                                     :      Civ. No. 21-1060-CFC
        Plaintiff,                   :
                                     :
        v.                           :
                                     :
YUCAIPA AMERICAN ALLIANCE FUND :
I, L.P., and YUCAIPA AMERICAN        :
ALLIANCE (PARALLEL) FUND I, L.P.,    :
                                     :
        Defendants.                  :
_____

Laura Davis Jones, David M. Bertenthal, Peter J. Keane, PACHULSKI STANG
ZIEHL & JONES LLP, Wilmington, Delaware; Patricia L. Glaser, Gali Grant,
Matthew P. Bernstein, GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO
LLP, Los Angeles, California,

        *Counsel for Appellants.*

Seth A. Niederman, FOX ROTHSCHILD LLP, Wilmington, Delaware; Gregory P.
Joseph, Douglas J. Pepe, Gila S. Singer, JOSEPH HAGE AARONSON LLC, New
York, New York; Jeffrey H. Zaiger, Judd A. Lindenfeld, ZAIGER LLC, Stamford,
Connecticut,

        *Counsel for Appellee.*

## **MEMORANDUM OPINION**

July 11, 2022
Wilmington, Delaware

_Cohn F. Connolly_
CONNOLLY, CHIEF JUDGE

On May 4, 2021, the Bankruptcy Court issued a 115-page Opinion (Adv. D.I. 563)[1] and Order (Adv. D.I. 564) with respect to cross-motions for summary judgment that disposed of some but not all claims asserted in two adversary proceedings: the so-called "Estate Action" (Adv. Proc. No. 13-50530-CSS) and the so-called "Lender Action" (Adv. Proc. No. 14-50971-CSS). The Order directed the parties to submit a proposed judgment reflecting the Bankruptcy Court's rulings. On June 23, 2021, following briefing by the parties, the Bankruptcy Court entered a $130 million judgment (Adv. D.I. 579) ("Judgment") on certain claims in favor of plaintiff Catherine Youngman, as Litigation Trustee for ASHINC Corporation and its affiliated Debtors ("Trustee"), and against defendants Yucaipa American Alliance Fund I, L.P., and Yucaipa American Alliance (Parallel) Fund I, L.P. ("Yucaipa").

Currently before the Court are the Bankruptcy Court's proposed findings of fact and conclusions of law ("FFCL") pursuant to Federal Rule of Bankruptcy

---

[1] Unless otherwise noted, "Adv. D.I. __" shall refer to the docket of the Lender Action, Adv. Proc. No. 14-50971-CSS. The docket of the Chapter 11 cases is cited as "B.D.I. __." Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Opinion.

Procedure 7052 and 9033[2] as they were issued solely with respect to the

Bankruptcy Court's granting of summary judgment in favor of the Trustee and

against Yucaipa in the Lender Action with respect to the Trustee's non-core breach

of contract claim referred to in these proceedings as "Lender Claim 2."

For the reasons set forth herein, the Court sustains in part Yucaipa's

Objections to the Opinion and Order and adopts the remaining proposed FFCL

submitted by the Bankruptcy Court with respect to Lender Claim 2.

## II.     RELEVANT BACKGROUND[3]

This dispute arose in the Chapter 11 cases of Allied Systems Holdings, Inc.,

which sought bankruptcy protection on May 17, 2012.  Over the past 8½ years, the

Honorable Christopher S. Sontchi has presided over the Chapter 11 cases,

including the long and contentious history of litigation in two adversary

proceedings brought against Yucaipa concerning the First Lien Credit Agreement

("FLCA") and multiple amendments thereto.

---

[2] The Opinion and Order constituted the Bankruptcy Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.  Bankruptcy Rule 9033 provides that, in any proceeding in which the Bankruptcy Court has issued proposed findings of fact and conclusions of law, this Court shall review *de novo* "any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made . . . "  FED. R. BANKR. P. 9033.

[3] As it is written primarily for the parties, this Memorandum Opinion sets forth only the procedural background relevant to this proceeding.

The Estate Action, filed on February 1, 2013 by the Official Committee of Unsecured Creditors (the "Committee"), asserts claims for (i) equitable subordination, (ii) recharacterization, (iii) breach of contract, (iv) specific performance, and recovery of avoidable transfers, and (v) disallowance of certain claims.

The Lender Action, filed on November 19, 2014, by BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd. (collectively, "Black Diamond"), and Spectrum Investment Partners, L.P. ("Spectrum," and together with Black Diamond, "BD/S"), asserts claims for (i) equitable subordination, (ii) breach of contract, (iii) breach of the implied duty of good faith and fair dealing, and (iv) tortious interference with contract.  With respect to the breach of contact claim at issue here—Lender Claim 2—the complaint in the Lender Action alleges that Yucaipa breached the FLCA by (i) acquiring more first lien debt from ComVest in August 2009 than permitted under the Third Amendment (Adv. D.I. 1 ¶¶ 117–120; 123(a)); (ii) declaring itself to be the Requisite Lender as a result of an impermissible acquisition of First Lien Debt (*id.* ¶ 121; *see also id.* ¶ 123(b)); (iii) breaching the Third Amendment's provisions related to voting rights "by improperly acting as Requisite Lender" (*id.* ¶ 122); (iv) using its status as Requisite Lender "to neutralize the First Lien Lenders, giving the debtors a 'free pass' to ignore" the FLCA's provisions, and to protect its equity investment by precluding

3

a restructuring of Allied (*id.* ¶ 123(c)–(d)); and (v) violating the Third

Amendment's Capital Contribution Provision by not making a capital contribution

of at least 50% of the aggregate principal of the Term Loans that Yucaipa acquired

from ComVest on August 21, 2009, within 10 days of acquiring that debt (*id.* ¶¶ 54

(second bullet), 101).

In 2020, the Trustee and Yucaipa each moved for summary judgment on

certain of the Trustee's claims.  On May 4, 2020, the Bankruptcy Court issued the

Opinion and Order.  As both parties had moved the Bankruptcy Court for

affirmative relief, the Order included language indicating that the claims at issue

constituted a "'core proceeding' pursuant to 28 U.S.C. § 157(b)" and that the

Bankruptcy Court had "judicial power to enter a final order."  With respect to

Lender Claim 2, the Bankruptcy Court rejected Yucaipa's argument that this claim

was barred by Delaware's 3-year statute of limitations and further determined that

the Trustee had carried her burden of establishing the absence of a genuine issue of

material fact regarding the elements of breach of contract under New York law.[4]

The Order directed the parties to submit a proposed judgment reflecting the various

rulings in the Opinion and Order.

---

[4] The Bankruptcy Court previously held that the Delaware statute of limitations applies as it related to the FLCA and its various amendments.  (*See* B.D.I. 1068 ("2/27/13 Hearing Tr.") at 108:1-17 (hearing on the motion to dismiss Yucaipa's cross-claims)).

Prior to submission of the proposed judgment, however, Yucaipa filed its

Rule 9033 Objection (D.I. 1-2) ("9033 Objection") along with an objection to the

entry of judgment (Estate Action, Adv. D.I. 830) ("Proposed Judgment

Objections") asserting, inter alia, that the Bankruptcy Court lacked authority to

enter a final judgment on non-core claims in both the Estate Action and Lender

Action – specifically, Lender Claim 2 and Estate Claim 5.[5]  The Bankruptcy Court

subsequently advanced questions to the Trustee regarding: (i) whether Yucaipa

consented to the Court exercising jurisdiction to issue final orders and judgments

on non-core claims through its conduct, and (ii) whether the Bankruptcy Court can

provide findings of fact on summary judgment where the Court ruled *as a matter*

*of law*, in whole or in part, in favor of the Trustee on certain claims including

Lender Claim 2.  On June 22, 2021, the Trustee filed her responses to the

Objections (D.I. 1-3) ("9033 Response"), which also responded to specific

questions that the Bankruptcy Court posed regarding its ability to enter a final

order with respect to the non-core Estate Claim 5 based on Yucaipa's waiver,

along with an amended proposed form of Judgment (Adv. D.I. 575-1).  The

Trustee conceded in her 9033 Response that Lender Claim 2 was a non-core claim,

as previously determined by the Bankruptcy Court (*see* Adv. D.I. 70), and that

---

[5] Yucaipa's Objections do not contest the Court's jurisdiction to enter final orders
or judgment where summary judgment was granted *in its favor*.

Yucaipa had not consented to entry of a final order by the Bankruptcy Court on that claim. (*See* Response, D.I. 1-3 at 5). The Trustee requested that the Bankruptcy Court issue clarifications that: (i) "the rulings on [Lender Claim 2] are entered as proposed findings of fact and conclusions of law," and similarly (ii) "if it is later determined that this Court somehow lacked jurisdiction to enter final orders and judgments on Estate Claim 5, that the Opinion should be construed as proposed findings and conclusions." (*Id.* at 2-3 & 5 n.8).[6]

On June 22, 2021, Yucaipa filed its reply (D.I. 1-4) ("9033 Reply"), in which it also responded to the specific questions posed by the Bankruptcy Court and took the position that it had properly contested the Bankruptcy Court's authority to enter a final order with respect to both Lender Claim 2 and Estate Claim 5. (D.I. 1-4 at 4). On June 23, 2021, the Bankruptcy Court entered the Judgment on various claims, including Estate Claim 5, but it did not enter Judgment on Lender Claim 2 or issue any clarifications.

On July 23, 2021, Yucaipa filed a Notice of Completion of Briefing, indicating that briefing on its 9033 Objections was complete and "request[ing] transmittal to the District Court" for *de novo* review solely with respect to "*that*

---

[6] Because this Court's standard of review is *de novo*, any error in this regard is harmless. *See Exec. Benefits Ins. Agency v. Arkinson*, 573 U.S. 25, 39-40 (2014) (District Court's *de novo* review of the Bankruptcy Court's order granting summary judgment and entry of its own judgment cured any error in the Bankruptcy Court's earlier entry of judgment).

*portion of the Order* contained in the first Paragraph 2 thereof granting summary

judgment in favor of the Plaintiff [Trustee] and against Defendants [Yucaipa] …

*on the non-core "Lender Claim 2 (Breach of Contract)."* (D.I. 1-6) (emphasis

added). Yucaipa has appealed other determinations made in the Opinion, Order,

and Judgment, which appeals are pending before the Court in separate proceedings.

*See* Civ. No. 21-994-CFC, 21-995-CFC.

## III.   JURISDICTION AND STANDARDS OF REVIEW

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Solely

before the Court is the Bankruptcy Court's grant of summary judgment in favor of

the Trustee on the breach of contract claim asserted in Lender Claim 2, which is a

final order. With respect to a matter that is not a core proceeding under 28 U.S.C.

§ 157(b)(2) but is nonetheless related to a case under title 11, the bankruptcy court

shall submit proposed findings of fact and conclusions of law to the district court.

*See* 28 U.S.C. § 157(c)(1). Here, the Bankruptcy Court noted that the Opinion

"constitutes the Court's findings of fact and conclusions of law pursuant to Federal

Rule of Bankruptcy Procedure 7052." (Opinion at 2 n.1). Following submission,

"any final order or judgment shall be entered by the district court judge after

considering the bankruptcy judge's proposed findings and conclusions and after

reviewing de novo those matters to which any party has timely and specifically

objected." 28 U.S.C. § 157(c)(1). With respect to the standard of review, the

Federal Rules of Bankruptcy Procedure further instruct:

> The district judge shall make a de novo review upon the record or, after
> additional evidence, of any portion of the bankruptcy judge's findings of fact
> or conclusions of law to which specific written objection has been made in
> accordance with this rule. The district judge may accept, reject, or modify
> the proposed findings of fact or conclusions of law, receive further evidence,
> or recommit the matter to the bankruptcy judge with instructions that "[t]he
> district judge may accept, reject or modify the proposed findings of fact or
> conclusions of law, receive further evidence, or recommit the matter to the
> bankruptcy judge with instructions.

FED. R. BANKR. P. 9033(d). "In conducting a *de novo* review, the Court must

consider all of the Bankruptcy Court's findings and conclusions and afford them

no presumption of validity." *In re Montgomery Ward & Co.*, 2004 WL 323095, at

*1 (D. Del. Feb. 13, 2004), *rev'd on other grounds*, 428 F.3d 154 (3d Cir. 2005).

Pursuant to Rule 56, a court "shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56; *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322-23 (1986) ("Under Rule 56(c), summary judgment is

proper if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of

law."). If the moving party has carried its burden, the nonmovant must then "come

forward with specific facts showing that there is a genuine issue for trial."

8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Finally, under the summary judgment standard, the Bankruptcy Court was required to "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## IV.   ANALYSIS

Yucaipa identifies five specific objections to the Bankruptcy Court's Opinion and Order ("Objections A-E"). (*See* D.I. 1-2 at 9-14). As Yucaipa explains, "[t]he focus of these objections is on the Bankruptcy Court's resolution

9

of the non-core claims for breach of contract; Yucaipa will present its grounds for reversal as to the other claims in its appeal from the judgment, once entered." (*Id.* at 9). The Court reviews *de novo* each of the specific objections below.

**A.     Objection A:** Opinion at 6

Yucaipa objects to the discussion of jurisdiction at page 6 of the Opinion, which states: "This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)." (Opinion at 6). Yucaipa argues that Lender Claim 2 is a quintessentially non-core claim as to which the Bankruptcy Court lacked jurisdiction to enter a final order. (D.I. 1-2 at 9).

It is not disputed that Lender Claim 2 is a non-core claim. The Bankruptcy Court has previously determined as much, and the Trustee concedes. I therefore agree with Yucaipa that is it appropriate at this juncture to review *de novo* any findings of fact and conclusions of law supporting the Bankruptcy Court's grant of summary judgment in favor or the Trustee on the breach of contract claim asserted in Lender Claim 2.

**B.     Objection B:** Opinion at 6-22

**1.     Objection to factual history**

Yucaipa objects to the Bankruptcy Court's factual findings in the Opinion, including the "Factual History" set forth in pages 6-22. (D.I. 1-2 at 10-12).

10

Yucaipa argues that the Bankruptcy Court made findings of fact in "violat[ion of] the fundamental standards that are supposed to guide courts' resolution of summary judgment motions." (*Id.* at 10). According to Yucaipa, the Bankruptcy Court "resolved genuine issues of material fact, ignored or mischaracterized evidence, failed to construe the evidence in a light most favorable to the non-moving party (Yucaipa), drew inferences against the non-moving party (Yucaipa), and in some instances allowed the Trustee to rely on noting more than speculation." (*Id.*)

The Bankruptcy Court expressed its disagreement with this argument during the hearing on Yucaipa's motion for stay pending appeal held on July 6, 2021. (*See* Estate Action, Adv. D.I. 864 ("7/6/21 Hearing Tr.") at 31:21-32:3 ("[T]there was no fact finding. There's no violation of the summary judgment rules. Every fact that is the underpinning of the judgment was undisputed or, to the extent there was a dispute as to what it might have meant if you had applied parol[e] evidence, it was irrelevant because it was based solely on the plain meaning of the documents. Plain meaning of documents is not a fact-finding exercised by the Court that could somehow be disputed.").

The Bankruptcy Court recommended that this Court enter summary judgment in the Trustee's favor on Lender Claim 2 under Rule 56. Rule 56 requires that "[t]he court should state on the record the reasons for granting or

11

denying the motion." Fed. R. Civ. P. 56(a).  The Trustee argues, under Federal Rule of Civil Procedure 52(a)(3) — made applicable to adversary proceedings under Bankruptcy Rule 7052 — the Bankruptcy Court "is not required to state findings or conclusions when ruling a motion under Rule 12 or 56." Fed. R. Civ. P. 52(a)(3).  The Trustee argues that Rule 52(a)(3) is stated permissively, leaving it "totally within the discretion of bankruptcy judges as to whether they wish to make any specific findings of fact and/or conclusions of law" in connection with deciding a motion for summary judgment.  *Barone v. Strouse, Greenberg Mortg. Co.*, 71 B.R. 521, 524 (Bankr. E.D. Pa. 1987).[7]

Assuming that is true with respect to entry of summary judgment on a core matter, it is undisputed that the breach of contract claim at issue here—Lender Claim 2—is a non-core claim, and therefore, under 28 U.S.C. § 157(c)(1), any final judgment on that claim required not only a statement of "reasons for granting or denying the [Trustee's summary judgment] motion" under Rule 56, but also

---

[7] *See also Leibowitz v. Kalamata Capital Grp. LLC*, 625 B.R. 390, 398 n.5 (N.D. Ill. 2021) ("[T]he court is not stating findings of fact or conclusions of law because Civil Rule 52(a)(3), made applicable by Bankruptcy Rule 7052, does not so require when ruling on a motion for summary judgment . . . [T]his Memorandum Decision constitutes the court's statement on the record for granting or denying the Motions."); *Devices Liquidation Tr. v. KMT Wireless, LLC*, 588 B.R. 661, 662 (Bankr. E.D.N.Y. 2018) ("The Court is not stating findings of facts and conclusions of law as [Bankruptcy Rule] 7052 . . . does not so require in ruling on a motion for summary judgment."); *Sheet Metal Workers Nat'l Pension Fund v. Kern*, 542 B.R. 87, 90 (Bankr. E.D.N.Y. 2017) (same).

submission of "proposed findings of fact and conclusions of law" sufficient to

support its holding – *i.e.*, , in the summary judgment context, the undisputed facts

that warrant judgment as a matter of law in favor of the moving party.

Notwithstanding Yucaipa's objection, the Bankruptcy Court's careful

Opinion meets these requirements. (*See* Opinion at 2 n.1 (stating "This Opinion

constitutes the Court's findings of fact and conclusions of law pursuant to Federal

Rule of Bankruptcy Procedure 7052.")) As discussed below, having reviewed *de

novo* the matters raised in Yucaipa's 9033 Objections with respect to Lender Claim

2, I find that the Bankruptcy Court correctly applied the summary judgment

standard, relying on undisputed facts or the plain meaning of documents, in finding

that the Trustee carried her initial burden in "establishing the absence of a genuine

issue of material fact" regarding the elements of breach of contract under New

York law, *Celotex*, 477 U.S. at 322, and that Yucaipa failed to produce "evidence

in the record creating a genuine issue of material fact" as to those same elements. [8]

---

[8] Because review of the proposed FFCL is *de novo*, I need not address whether
Yucaipa otherwise consented to the Bankruptcy Court's authority to enter a final
order on Lender Claim 2. (*See* D.I. 1-2 at 3-4).

13

### 2.        Objections to specific factual findings

In its 9033 Objections, Yucaipa cites three examples of the Bankruptcy

Court's purported misapplication of the summary judgment standard  (D.I. 1-2 at

10-12).[9]

First, Yucaipa objects to the finding contained in the Opinion that "[f]rom

late 2011 through Spring 2012, Yucaipa demanded a ***premium*** price of $1.15 for

each dollar of its First Lien Debt, based on the premise that it was Requisite

Lender." (Opinion at 19 n.26)  (emphasis added).  Yucaipa contends that the

question of whether Yucaipa demanded a "premium" in those negotiations was

"heavily disputed." (D.I. 1-2 at 10-11).  Yucaipa argues that its summary

judgment opposition brief demonstrated, with supporting evidence, that "Yucaipa

agreed to ratable treatment, but then BD/S walked away from the deal and filed the

involuntary bankruptcy instead." (*Id*. at 10-11).  Yucaipa cites pages 24-25 of its

summary judgment opposition brief (Adv. D.I. 510 ("Yucaipa Opp. Br.")) and the

declaration in support (Adv. D.I. 511) in its entirety.

---

[9] Yucaipa contends these examples "are merely illustrative, not exhaustive" and
Yucaipa purports to "reserve its rights to challenge every erroneous factual and/or
evidentiary ruling in the Opinion." (D.I. 1-2 at 10).  The docket reflects that
Yucaipa has caused the proposed FOFCOL and its 9033 Objections to be
transmitted to this Court for *de novo* review, and Yucaipa had the burden of
submitting "timely and specific[]" objections for the Court's review. *See* 28
U.S.C. § 157(c)(1).  The Court therefore considers only the specific objections
asserted by Yucaipa in its 9033 Objections.

The communications cited by Yucaipa did not preclude the entry of summary judgment. Yucaipa cites an email dated May 16, 2012—the day before BD/S filed an involuntary petition against the Debtors—in which counsel for BD/S memorialized the prior day's "discussions" between BD/S and Yucaipa concerning ratable treatment. (*See* Yucaipa Opp. Br. at 24-25 (citing Adv. D.I. 464 ("Singer Decl.") at Exhs. 68, 70 at 3–4 (¶¶ 4,6) (filed under seal)). Yucaipa claims that a draft agreement circulated by BD/S's counsel in the May 16, 2012 email memorialized an earlier agreement to accept equal and ratable treatment. (*Id.* at 24 (citing Ex. 70)). As set forth to in the accompanying declarations, however, there was no such "agreement [] reached on these issues, in principle or otherwise." (*See* Adv. D.I. 801 ("Harris Decl.") ¶ 5). As the Trustee correctly points out, the documents identified by Yucaipa in support of its contention that it agreed to ratable treatment consist only of attorney discussions and do not demonstrate a genuine issue as to the fact that Yucaipa had demanded a premium. *See In re Revstone Indus., LLC*, 2019 WL 2929328, at *4 (D. Del. 2019) *aff'd* 834 F. App'x 695 (3d Cir. 2020) (denying objection because Bankruptcy Court "did not weigh any evidence or determine the truth of any matter," rather it "determined that Defendant failed to present anything in rebuttal to the Motions other than conclusory, self-serving, and hedged statements unsupported by any evidence").

Yucaipa failed to put forth concrete evidence that it offered ratable treatment to the Lenders, thus the Trustee's evidence to the contrary stands undisputed.

Second, Yucaipa objects to the finding at page 30 of the Opinion that, in August 2009, Yucaipa had the option, entirely in its own discretion, to make a Capital Contribution either in the form of $57 million in cash or "as an exchange [of Yucaipa's newly acquired Term Loans] for equity interests" in Allied, but that Yucaipa did neither, which constituted a breach of contract. (*See* Opinion at 30). Yucaipa asserts that the Bankruptcy Court then made the "logical" leap—without citing any evidence—that in August 2009, Yucaipa indisputably would have elected to contribute cash. The Bankruptcy Court found "It is illogical to think that Yucaipa would exchange its Term Loans in favor of worthless equity in Allied." (*Id.*) According to Yucaipa, "[t]his factual conclusion is not only unsupported, it is itself illogical" and "ignored Yucaipa's argument that it would have been absurd for it to have agreed in August 2009 to pay $43 million to ComVest to acquire $145.1 million (principal face value) of debt, and then ten days later pay a massive premium of an *additional* $57.4 million to Allied in cash, instead of simply converting half of the discounted debt to Allied equity." (D.I. 1-2 at 11) (citing Yucaipa Opp. Br. at 5). In other words, Yucaipa argues, "the Bankruptcy Court erroneously concluded that the only "logical" course for Yucaipa in August 2009 would have been to pay *more than double* what ComVest had paid for the same

16

debt six months earlier, even when Allied's outlook continued to decline in the interim." (*Id.*)

With respect to the finding that Yucaipa had the option to contribute cash or debt in August 2009, the Trustee says this line of argument misses the point, and I agree. Whether it would have made more sense for Yucaipa to contribute Term Loans or equity to Allied on August 31, 2009, has no bearing on the undisputed fact that "Allied received neither." (Opinion at 30). The Bankruptcy Court measured the Estate's damages not by deciding that it was logical for Yucaipa to elect a cash contribution in August 2009, but by observing that Yucaipa can no longer contribute its Term Loans. (Opinion at 32-33). Yucaipa failed to contest this dispositive finding.

With respect to the effect of Yucaipa's failure to make a Capital Contribution to Allied, Yucaipa argues that the Bankruptcy Court engaged in "speculation about what would have happened in [a] counterfactual scenario" in which Yucaipa made its Capital Contribution (D.I. 1-2 at 11-12) and objects to the Bankruptcy Court's finding (Opinion at 31) that "Allied was insolvent at the time of the breach" in August 2009. On the next page of the Opinion, the Bankruptcy Court concluded that Yucaipa's failure to contribute $57.4 million to Allied in August 2009 "ensured" Allied's second bankruptcy nearly three years later. According to Yucaipa, "[t]here is zero evidence to support the Bankruptcy Court's

17

speculation about what would have happened in that counterfactual scenario."
(D.I. 1-2 at 11).  According to Yucaipa, the evidence cited by Bankruptcy Court in
support of this finding—the deposition testimony of the Trustee's damages
expert—"directly contradicts the Bankruptcy Court's finding."  (*Id.*)  The expert
testified: "I'm not going to speculate on what would have happened with that cash
because there's too many . . . variables."  (Opinion at 32 n.78).

    As the Trustee correctly points out, however, the Opinion reflects that the
Bankruptcy Court did not engage in speculation but did the exact opposite — it
rejected Yucaipa's expert's speculation that "Allied would have 'burned through'
all the money and it would add no value to Allied," had Yucaipa made the Capital
Contribution.  (Opinion at 31-32).  Refusing to engage in such speculation, the
Bankruptcy Court made the uncontroversial point that if Allied was already headed
toward a second bankruptcy, Yucaipa's failure to make a Capital Contribution did
not help Allied avoid that fate.  (*Id.* at 32).  In any event, the Bankruptcy Court's
statement was in the context of discussing the damages to the Estate as a result of
Yucaipa's breach of the Capital Contribution Provision.  Yucaipa fails to challenge
the Bankruptcy Court's key holding that, under settled New York law, the full cash
value of the Capital Contribution as a result of Yucaipa's breach is a stable
foundation to award damages given that Yucaipa admitted that it breached the
FLCA.  (*See* B.D.I. 4144 ("2/4/21 Hearing Tr.") at 59:25-60:15 (Yucaipa's

Counsel: "[I]n hindsight we know the fourth amendment was *void ab initio*, so

when Yucaipa acquired more than the third amendment allowed, that was a breach

of the contract.  The second breach is what we call the capital contribution

provision . . . [T]en days after acquiring term loans [Yucaipa] needs to make a

capital contribution; undisputed Yucaipa didn't do that. And again . . . in hindsight

we know that that was required and it was a breach of the contract in failing to

make the capital contribution within ten days."))

**Objection C:**  Opinion at 26-38

Yucaipa objects to several of the Bankruptcy Court's conclusions addressing

the breach of contract claim asserted in Lender Claim 2.  First, Yucaipa asserts that

the Bankruptcy Court erred in concluding that the Litigation Trustee had

established as a matter of law and undisputed fact that the Estate and Lenders

suffered damages resulting from Yucaipa's breach of the Capital Contribution

Provision, and that the appropriate measure of damages was the full amount of the

Capital Contribution.  (*See* D.I. 1-2 at 12-13).  According to Yucaipa, its summary

judgment papers demonstrated that the Trustee had no evidence of damages

resulting from the alleged breach, and at the very least there was a genuine dispute

concerning the fact and amount of any damages, which precludes summary

judgment. (*See id.* (citing Adv. D.I. 454 ("Yucaipa Opening Br.") at 27-30;

Yucaipa Opp. Br. at 3-11; Adv. D.I. 544 ("Yucaipa Reply Br.") at 17-18)).

19

Conversely, the Trustee argues there was no "genuine dispute" concerning the fact and amount of damages for Yucaipa's breach of the Capital Contribution Provision. (*See* 9033 Objection at 12). I agree. The Bankruptcy Court correctly applied New York law on this issue, which places the "burden of uncertainty" as to the amount of damages on the wrongdoer. (Opinion at 31). The Bankruptcy Court rejected Yucaipa's expert's "speculative" opinion that Allied "would have 'burned through' all the money" and accepted the reasonable estimate put forth by the Trustee's expert that damages are best measured by the full cash value of the Capital Contribution. (*Id.* at 30-31). Because Yucaipa fails to challenge the Court's application of New York law, its objection must fail. *See In re Green Field Energy Servs., Inc.*, 610 B.R. 760, 771-72 (D. Del. 2019) (denying objection to proposed findings of fact because defendants "ignore [the bankruptcy court's] critical holding and have not objected to it"), *aff'd*, 834 F. App'x 695 (3d Cir. 2020).

Second, Yucaipa asserts that the Bankruptcy Court erred in awarding prejudgment interest on the contract claims. (D.I. 1-2 at 12-13). Yucaipa argues that the Bankruptcy Court determined that prejudgment interest shall accrue "from the date of the breach" of the Capital Contribution provision in August 2009. (Opinion at 33). In analyzing the timeliness of Lender Claim 2, Yucaipa asserts, the Bankruptcy Court erroneously agreed with the Trustee that "Yucaipa

20

continuously breached" the FLCA through 2013, such that it would be improper to "isolate" the August 2009 breach, and it was therefore "impossible to determine the extent of the breach" or the damages resulting from it until the JCT 363 sale in December 2013. (D.I. 1-2 at 12 (citing Opinion at 42-45)). According to Yucaipa, it cannot simultaneously be true that (a) there was an actionable breach causing the Lenders harm in August 2009 such that prejudgment interest started accruing immediately at that time and (b) the August 2009 breach was not independently actionable because it was part of one "continuous" breach that did not become actionable until December 2013. (*Id.* at 12-13).

As the Trustee correctly points out, however, Yucaipa's argument conflates the Estate's and the Lenders' breach of contract claims as well as the continuous breach doctrine. The Estate's breach of contract claim is based *solely* on Yucaipa's failure to make the Capital Contribution and was actionable when Yucaipa's contribution was due — *i.e.*, August 31, 2009. (Opinion at 32). In contrast, the Court held that the Lenders' breach of contract claim is based on Yucaipa's continuous breaches, which only became actionable upon the JCT 363 sale in December 2013. (*Id.* at 45).

Third, Yucaipa objects to the Bankruptcy Court's conclusion that the Third Amendment's covenant-not-to-sue did not bar Estate Claim 5. (D.I. 1-2 at 13 (citing Opinion at 37-38)). The grant of summary judgment on Estate Claim 5,

however, is not before the Court in this proceeding. Rather, the Bankruptcy Court has entered a final Order and Judgment on Estate Claim 5, which is currently on appeal. (*See* D.I. 1-6).[10]

**Objection D:** Opinion at 38-46

Delaware Code Title 10, Section 8106 specifies a three-year limitations period for the Contract-Based Claims:

> No action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action.

---

[10] Assuming, arguendo, however, that the Bankruptcy Court's conclusion has any bearing on Lender Claim 2, the Court finds no error. Yucaipa argues that its summary judgment papers demonstrated that the covenant-not-to-sue expressly bars Allied (and thus the Litigation Trustee, who now stands in Allied's shoes as to Estate Claim 5) from asserting claims against Yucaipa premised on any "omission" with respect to the Capital Contribution, and the only potentially relevant omission in connection with the Capital Contribution was Yucaipa's failure to make it. (D.I. 1-2 at 13 (citing Yucaipa Opening Br. at 31-35; Yucaipa Reply Br. at 18-2). Yucaipa contends that the Bankruptcy Court improperly referred to other hypothetical "omissions" that could apply to the covenant-not-to-sue at issue in order to reject Yucaipa's interpretation of the provision. (*See* D.I. 1-2 at 13 (citing Opinion at 37-38 & n.96)). As the Trustee correctly points out, however, the Bankruptcy Court's holding was that the covenant-not-to-sue clearly and unambiguously bars Allied from suing over an "omission" by Yucaipa "*only …* when Yucaipa *makes* a Capital Contribution of its Term Loans, which Yucaipa did not do." (Opinion at 38 (emphasis in original)). Yucaipa does not challenge the Bankruptcy Court's understanding of the plain meaning of this provision, on which its conclusions rely, and the Court finds no reason to disturb the Bankruptcy Court's conclusion. *See In re Green Field Energy Servs., Inc.*, 610 B.R. at 771-72.

10 Del Code § 8106. Yucaipa objects to the Bankruptcy Court's conclusions that Lender Claim 2 was not time-barred. (*See* Opinion at 38-46). According to Yucaipa, it is undisputed that "Delaware's three-year statute of limitations applies, that Yucaipa's alleged breach of the Capital Contribution happened in August 2009, and that the Lender Complaint was not filed until November 2014." (*See* D.I. 1-2 at 13 (citing Adv. D.I. 1 ¶ 135)).

In the proceedings below, the Trustee accused Yucaipa of isolating just one of its breaches—its purchase of ComVest's debt and declaration that it was Requisite Lender on August 21, 2009—to bar claims arising from all of its breaches. Based on the "continuous contract" and "continuous breach" doctrines, which are recognized under Delaware law, the Trustee argued that the FLCA granted the Lender reoccurring and continuous rights, that Yucaipa continuously breached the FLCA for 4 years on the pretext that it was Requisite Lender, and that the statute of limitations did not accrue until full damages were ascertainable. According to the Trustee, it was not until the JCT 363 Sale was consummated on December 27, 2013 that the cumulative effect of Yucaipa's breaches could be determined.

As the Bankruptcy Court correctly noted (*see* Opinion at 40-41), while a cause of action for breach of contract generally accrues at the time of breach, Delaware law recognizes exceptions for a "continuous contract" or a "continuous

breach." Under both exceptions, "the statute begins to run only when full damages can be ascertained and recovered." *See In re Burger*, 125 B.R. 894, 901-02 (Bankr. D. Del. 1991); *Guerrieri v. Cajun Cove Condo. Council*, 2007 WL 1520039, at *6 (Del. Super. Ct. Apr. 25, 2007) (statute of limitations did not accrue until damages could be ascertained where contract created an ongoing and continuous duty); *Smith v. Mattia*, 2010 WL 412030, at *4 (Del. Ch. Feb. 1, 2010) (same). Determining the application of these exceptions requires an analysis of "[w]hether the obligations under a contract are continuous or severable" which "turns on the parties' intent, which may be ascertained through the contract's terms and subject matter, taken together with the pertinent facts and circumstances surrounding its formation." *Smith*, 2010 WL 412030, at *4; *Kaplan v. Jackson*, 1994 WL 45429, at *3 (Del. Super. Ct. Jan. 20, 1994) (same).

Applying this framework, the Bankruptcy Court determined that the FLCA and the Third Amendment was a continuing contract. Specifically, in return for providing hundreds of millions of dollars in loans, the non-Yucaipa Lenders were entitled over time to, among other things:

> recurring principal and interest payments; (ii) recurring financial information from the Company and reasonable access to its management; (iii) the right to direct the Agent — through the Requisite Lenders — to exercise certain remedies in the case of an Event of Default; (iv) Capital Contributions in the amount of 50% of Term Loans acquired by Yucaipa; (v) Yucaipa never serving or acting as Requisite Lender; and (vi) Yucaipa never asserting any claims against them, or the Agent, in any way relating to the Credit Agreement or related documents.

24

(Opinion at 42 (footnotes omitted)).  Looking to "contract's terms and subject matter, taken together with the pertinent facts and circumstances surrounding its formation" to determine the parties' intent, these contractual rights were designed to ensure the First Lien Lenders were repaid the principal amount of their loans (with the applicable interest) over the duration of the Credit Agreement.  Thus it is a "continuous contract," and the Delaware courts hold that the statute of limitations for breach of a continuous contract does not accrue until "full damages can be ascertained and recovered." *Bridgestone/Firestone, Inc. v. Cap Gemini America, Inc.*, 2002 WL 1042089, at *7 (Del. Super. Ct. 2002).    Here, the extent of monetary damages caused by Yucaipa's continuous breaches of the FLCA was not ascertainable until December 27, 2013, when JCT purchased substantially all of Allied's assets for $135 million — generating only $53.8 million to Allied's First Lien Lenders, who held about $244 million of loans.

Yucaipa asserts that the Bankruptcy Court erred in applying the "continuous breach" doctrine, as the Third Circuit has held that the doctrine is a narrow exception to the statute of limitations and does not apply where, as here, the complaint alleges a discrete breach of a specific provision of a contract that was actionable at the moment of the breach.  (D.I. 1-2. at 14).  Yucaipa argues that the Bankruptcy Court departed from binding case law in Delaware and the Third Circuit, misconstrued the contract, and ignored the Trustee's specific theory of

breach. (*See id.* (citing Yucaipa Opening Br. at 19-26; Yucaipa Reply Br. at 2-17;

Estate Action, Adv. D.I. 819; Adv. D.I. 558 (Yucaipa's supplemental post-hearing

letter brief)). Yucaipa cites *Norman v. Elkin*, 961 F.3d 275, 286 (3d Cir. 2020),

which, according to Yucaipa, explains that the "continuous breach" doctrine is a

"narrow" exception to the statute of limitations that applies "only in unusual

circumstances." *Id.* at 286.

In *Norman*, majority shareholder Elkin and minority shareholder Norman

founded a company ("USM") for the purpose of acquiring certain FCC licenses.

Elkin later caused USM to enter into a Shareholder Loan Agreement ("SLA")

pursuant to which "USM agreed to treat any amount Elkin contributed above his

capital requirement as a loan." *Id.* at 279. Elkin neither informed Norman about

the SLA nor sought his approval for it, and purportedly lent USM in excess of

$600,000. *Id.* Thereafter, Elkin caused USM to sell certain licenses, and in a

series of distributions effectuated by Elkin from 2000 to 2002, USM paid Elkin

$615,026 from the proceeds of the license sales. Norman received nothing and

eventually brought an action against Elkin. Following years of litigation,

Norman's continuous breach argument was rejected.

On appeal, the Third Circuit noted that, under Delaware law, the continuing

breach doctrine is narrow and typically is applied only in "unusual situations." *Id.*

at 286. Norman's breach of contract claim did not present such an "unusual

situation," as each individual distribution Elkin made to himself constituted, at least in theory, a discrete and readily determinable violation of Norman's rights as a 25% equity-holder. *Id.* at 286. The Court rejected Norman's contention that he had asserted an overarching and continuous breach because his damages from each individual distribution were "inherent[ly] contingen[t]" on the SLA being invalidated and could not be calculated until that time. The Court found that the SLA's validity and Elkin's purported failure to make proper distributions were adjudicated simultaneously, as the question of the SLA's validity arose in connection with Elkin's defense to Norman's breach of contract claim—not as a condition precedent to the claim. The Court therefore rejected what it described as "Norman's unsupported attempt to dramatically expand the 'narrow' continuous breach doctrine such that it reaches defenses to claims rather than true contingencies." *Id.* at 286.

In my view, the facts of *Norman*—distributions under a contested loan agreement—differ significantly from those at issue here. While there was a discrete and readily determinable breach here, that breach led to an unforeseeable chain of events and with serious consequences for the Debtor and damages that could not have been known (or sought) at the time of the breach, and, which in my view, constitute unusual circumstances under *Norman*. The initial breach—the purchase of ComVest's debt in 2009—was just an initial trigger which enabled

27

Yucaipa to continuously breach the FLCA in various ways, including by (i) causing Allied to cease making principal or interest payments from that point onward; (ii) blocking Lenders from the Company's financial information and access to management; (iii) preventing any restructuring dialogue among the Lenders; (iv) preventing Lenders from exercising remedies for the Company's ongoing Events of Defaults; (v) routinely asserting claims against the Agent and Lenders in contravention of the express covenant not to sue; and (vi) demanding JCT pay Yucaipa, and no other Lender, a premium of $1.15 for each dollar of its First Lien Debt.

As the Trustee points out, none of these later, continuous breaches was committed by Yucaipa when it executed the void Fourth Amendment or proclaimed that it was the Requisite Lender in 2009. None was an effect caused by execution of the Fourth Amendment or assumption of Requisite Lender status. As purported Requisite Lender, Yucaipa could still have (1) allowed Allied to make principal and interest payments, (2) granted Lenders access to the Company's financial information and management, (3) permitted restructuring dialogue among the Lenders, (4) allowed Lenders to exercise remedies for Allied's ongoing Events of Defaults, (5) not asserted claims against the Agent and Lenders in contravention of Yucaipa's express covenant not to sue, and (6) not demanded JCT pay Yucaipa, and no other Lender, a premium of $1.15 for each dollar of its debt. But under

28

these circumstances, where continuous and additional breaches were committed, Lenders were not required to bring piecemeal litigation and it would have been inefficient to have done so. Rather, the "continuous contract" and "continuous breach" exceptions should apply, and the statute of limitations does not begin to run until their full damages could be ascertained and recovered. Here, the extent of monetary damages caused by Yucaipa's continuous breaches of the First Lien Credit Agreement was not ascertainable until December 27, 2013, when JCT purchased substantially all of Allied's assets for $135 million — generating only $53.8 million to the Company's First Lien Lenders, who held about $244 million of loans

The Bankruptcy Court was persuaded by *Branin v Stein Roe Investment Counsel LLC*, 2015 WL 4710321, at *7 (Del. Ch. July 31, 2015). In that case, the Chancery Court held the defendant-employer was in continuous breach of an operating agreement by declining (at least 5 times) to indemnify the plaintiff-employee. *Id.* at *2. The *Branin* court ruled that the statute of limitations was "appropriately suspended for the period during which [plaintiff's] liabilities grew," and it observed that requiring plaintiff "to sue continually to enforce his indemnification right would have been inefficient." *Id.* at *7.

The Bankruptcy Court was also persuaded by *In re Burger,* 125 B.R. 894 (Bankr. D. Del. 1991). In that case, the parties entered into a service contract

29

where Burger would purchase a herd of cattle with the investor's money, manage, maintain and expand the herd as well as improve the quality of the herd. *Id.* at 898. The investor agreed to pay all feed and upkeep expenses while Burger would pay over all milk revenues and any sale proceeds from bulls or cull cows. *Id.* The investor and Burger also executed a seven-year lease agreement, wherein the investor would pay monthly rent for keeping the herd at Burger's ranch. *Id.* At the end of the seven-year period, the investor and Burger would liquidate the herd. *Id.* In *Burger,* the court held that the statute of limitations for the investor's claims against a farm manager's breach of contract did not accrue when he first allegedly breached the contract (in 1981). *Id.* at 901. The court further held that there was a continuous contract for a "fixed seven-year period where full and complete damages could not be determined by either party until the end of that time." *Id.* at 902. The *Burger* court stated:

> Moreover, any claim by the Investors for damages necessarily relies on the liquidation of the herd which, under the terms of the contract, was scheduled to take place on or about September 1, 1988. Furthermore, this contract was continuously acknowledged by both parties throughout the seven-year period by the various payments made between the parties. These payments toll the statute because a new promise to pay is implied therefrom.

*Id.* In reaching its conclusion, the Bankruptcy Court considered the facts at issue here and those in *Burger* to be remarkably similar:

> Here, the Lenders invested in Allied, pursuant to the FLCA, just as the cattle-investor paid for the initial herd of cattle. As part of that transaction, the Lenders expected to receive financial information, interest and principal

> payments, among other things.  If BD/S had to run into court at each and
> every breach – it would have been impossible to adjudicate let alone assess
> damages.  Here, the Court agrees that the failure to pay the Capital
> Contribution is just one of the breaches of the FLCA and the Third
> Amendment made by Yucaipa and that the parties had a continuous contract
> that Yucaipa continuously breached.  Furthermore, the Court finds that it
> would have been impossible to determine the extent of the breach until such
> time as the JCT 363 Sale, which determined the bulk of the damages. In
> other words, like in *Burger*, the full and complete damages could not be
> determined until the JCT 363 Sale.

(Opinion at 45).  I agree with the Bankruptcy Court's analysis and that the breach

considered by the *Burger* court more closely matches this case than that considered

in *Norman*.  The Bankruptcy Court properly considered (i) the continuing nature of

the Lenders' rights under the FLCA; (ii) an admission by Derex Walker (of

Yucaipa) that there had been multiple breaches of the FLCA dating back to August

2009; (iii) the fact that the Lenders' damages were not ascertainable until

December 27, 2013; and (iv) relevant case law supporting the Trustee's argument.

(*See* Opinion at 41-45).  The Court therefore adopts the Court's well-reasoned

finding that the continuous breach doctrine applies here as a matter of law.

**Objection E:**  Order at 2

Yucaipa objects to the Bankruptcy Court's finding that "this is a core

proceeding, pursuant to 28 U.S.C. § 157(b)" and "this Court has the judicial power

to enter a final order."  (D.I. 1-2 at 14).  As explained above, the Court agrees and

has accordingly undertaken this *de novo* review of the proposed FFCL relating to

31

the Bankruptcy Court's grant of summary judgment to the Trustee on Lender Claim 2.

## IV.    CONCLUSION

Based on the Bankruptcy Court's own prior determination, and the parties' apparent agreement, I do not adopt any holding in the Opinion or Order that (i) Lender Claim 2 "is a core proceeding, pursuant to 28 U.S.C. § 157(b)" or that Lender Claim 2 is a claim for which "this [Bankruptcy] Court has the judicial power to enter a final order." I overrule Yucaipa's remaining Objections and adopt the remaining proposed FFCL solely with respect to Lender Claim 2.

The Court will issue a separate Order consistent with this Memorandum Opinion.